UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

PATRICIA KENNEDY ARRINGTON, DVM,
and RICHARD A. ARRINGTON,                                               Plaintiffs,

v.                                                                      Civil Action No. 3:14-cv-322-DJH

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY, CORNERSTONE
APPRAISAL SERVICES, INC., MARTIN J.
REEL, and JOHN DOES 1-10,                                               Defendants.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court upon the Motion to Remand of Plaintiffs Patricia Kennedy Arrington and Richard A. Arrington (Docket No. 5). Defendants Nationwide Mutual Fire Insurance Company and Martin J. Reel have responded (D.N. 6), and Plaintiffs have replied (D.N. 9). Fully briefed, this matter is ripe for adjudication. For the reasons set forth below, the Motion to Remand will be denied.

**I.  BACKGROUND**

On the morning of July 5, 2012, a house fire destroyed the Arringtons' Louisville, Kentucky, home. The Arringtons were insured by a homeowner's policy issued by Nationwide and filed a claim to recover their losses. According to the Arringtons' state court complaint, a conflict arose during the claims process: although Nationwide determined that the home could be reconstructed for substantially less than the insured value, the Arringtons disagreed, producing their own assessment. The assessment procured by the Arringtons reflects a higher amount than

1

that of Nationwide, but still "substantially less than the amount of coverage required by Nationwide.[1]" (D.N. 1-3 at 3)

The Arringtons allege that Nationwide utilizes two separate programs: one to determine the amount of premiums and coverage, and a second to determine the value of the actual loss suffered. They contend that the program used to set premium prices is purposefully set to incur a higher amount of coverage, thus raising the premiums paid by customers. Meanwhile, the program used to determine actual loss is keyed toward "the lowest possible reconstruction costs[,] using lesser materials than were actually in the dwelling." (D.N. 1-3 at 4) According to the Arringtons, this incongruence between the two programs results in maximized profits to Nationwide by "fraudulently overcharging and misleading" its insureds, including the Arringtons themselves. (D.N. 1-3 at 4)

In their July 3, 2013 Complaint, filed in Jefferson Circuit Court, the Arringtons assert that Nationwide, Cornerstone, and the remaining Defendants crafted a scheme to overcharge the Arringtons in premiums. Specifically, they state that Nationwide declined to insure their home for less than the 2009 Cornerstone appraisal value—even when their own insurance agent doubted this figure—and that the Defendants knew that should a claim be issued, the second program would affix a lesser cost of replacement. This incongruity, they say, violates Kentucky's Unfair Claim Settlement Practices Act. (D.N. 1-3 at 4) They also characterize the Defendants' actions as "fraudulent business practices" that violate Kentucky's consumer protection statutes. (D.N. 1-3 at 4) Their complaint states that the amount in controversy

---

[1] The Arringtons explain that during the 2009 policy year, Nationwide requested a home replacement appraisal from Cornerstone Appraisal Services, Inc. to aid in determining coverage and premiums for the residence. Cornerstone estimated that total reconstruction of the home would cost $1,069,000.00. As the policy required, coverage for the Arringtons' residence increased each year; in 2012, the dwelling itself was insured for $1,070,300.00, plus the escalation percentage with personal property insured for $749,210.00. (D.N. 1-3 at 3)

exceeds the state court's jurisdictional threshold (i.e., $5,000.00), but it seeks an unspecified amount of compensatory damages.

On April 16, 2014, Nationwide filed a notice of removal, asserting federal diversity jurisdiction. (D.N. 1) The Arringtons dispute Nationwide's inferences in their Motion to Remand. (D.N. 5) The Court will address the parties' arguments below.

## II. ANALYSIS

Generally, a civil case brought in a state court may be removed by a defendant to federal court if it could have been brought in federal court originally. 28 U.S.C. §1441(a). Federal jurisdiction ordinarily depends "'on the facts as they exist when the complaint is filed.'" *Jones v. Knox Exploration Corp.*, 2 F.3d 181, 182 (6th Cir. 1993) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)). In a case removed to federal court, "[t]he existence of subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal." *Harper v. AutoAlliance Int'l*, 392 F.3d 195, 210 (6th Cir. 2004).

A federal court has original diversity jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interests. § 28 U.S.C. § 1332(a). A defendant seeking to remove a case bears the burden of proving these two requirements by a preponderance of the evidence. *See Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006) (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993)). If the defendant fails to satisfy this burden as to either requirement, the federal court lacks subject matter jurisdiction to hear the case.

### A. Complete diversity of the parties

Nationwide asserts that despite the inclusion of claims adjuster Martin J. Reel as a defendant, complete diversity exists between the parties. Nationwide admits that Reel, like the

Arringtons, is a Kentucky citizen; however, the company argues that the Arringtons fraudulently joined Reel to the lawsuit. Therefore, Nationwide reasons that because the Arringtons have stated no cognizable claims against Reel and the remaining parties are completely diverse, the company has satisfied the Court's diversity requirements.[2]

"'[F]raudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity.'" *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)). The doctrine permits defendants to remove cases lacking complete diversity if the defendants establish that the plaintiff included claims against non-diverse defendants "for the sole purpose of preventing removal." *McLeod v. Cities Serv. Gas Co.*, 233 F.2d 242, 246 (10th Cir. 1956). In other words, when a plaintiff makes a claim so frivolous as to preclude any chance of success, the Court will presume that the plaintiff made the claim only to prevent removal. In such circumstances, the Court retains jurisdiction. *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009).

A defendant proves fraudulent joinder by demonstrating that the facts support "'no reasonable basis for predicting that the state law might impose liability'" on the non-diverse defendant. *Coyne*, 183 F.3d at 493 (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)). A court conducting this analysis must resolve any factual or legal

---

[2] The Arringtons also sued John Does 1-10 in their Complaint. They note in their Motion to Remand that when discovery clarifies the identity of these individuals, they will be named. (D.N. 5 at 3) However, it is well settled that the Court's diversity jurisdiction is established at the time of removal. *See Coyne*, 183 F.3d at 492. The removal statute specifically provides that the citizenship of defendants sued under fictitious names does not affect the removal analysis. *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title [i.e., diversity jurisdiction], the citizenship of defendants sued under fictitious names shall be disregarded."). Because this rule is dispositive here, these forthcoming defendants do not defeat complete diversity.

4

ambiguities in favor of the plaintiff. *Id.* Moreover, because fraudulent joinder is a jurisdictional doctrine, *see id.* at 492-93, the defendant carries a burden "even more stringent than the motion to dismiss standard" articulated by Federal Rule of Civil Procedure 12(b)(6). *Gibson v. Am. Min. Ins. Co.*, No. 08-118-ART, 2008 WL 4602747, at *5 (E.D. Ky. Oct. 16, 2008). Therefore, in order to avoid remand, Nationwide must establish that there is no "colorable basis for predicting" that the Arringtons will be able to recover against Reel. *Coyne*, 183 F.3d at 493. If even a "glimmer of hope" exists for the claim against Reel, there is no fraudulent joinder. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999). Nationwide's burden is substantial.

Although Nationwide has provided a wealth of caselaw, much of it is inapposite: the cases cited conclude that a claims adjuster may not be sued individually for breach of contract, bad faith, or violations of the Unfair Claims Settlement Practices Act or consumer protection statutes. However, the Arringtons maintain that their suit against Reel is instead grounded upon fraud. Nationwide also emphasizes that Reel only participated in the individual adjustment and management of the Arringtons' underlying claim and did not contribute to Nationwide's general business practices, including the fraudulent scheme that the Arringtons assert. While the Court may be inclined to agree with this argument, factual questions regarding Reel's involvement must be resolved in favor of the Arringtons at this early stage.

The Complaint itself, however, does not contain a claim for fraud against Reel or any allegation that he was involved in establishing the amount of coverage or setting the price of premiums. In their Motion to Remand, the Arringtons insist:

> [A]ccording to Paragraph 12 of the Complaint, Reel is being sued based upon the theory of fraud; to wit, being complicit in overcharging, participating in, and misleading the Arringtons in a fraudulent scheme to use a separate insurance program for premiums and coverage versus another insurance program to compute actual losses—a scheme designed to increase his

5

> employer's (Nationwide) profits by fraudulently overcharging and misleading its insureds and, arguably, his salary and bonuses.

(D.N. 5 at 3) Paragraph 12 of the Complaint, cited above, alleges: "The disparity of the programs between pricing for premiums and coverage and the program for determining actual loss are designed to increase Nationwide's profits while fraudulently overcharging and misleading its insureds such as the Arringtons." (D.N. 1-3 at 4)

Even in light of the stringent standard that Nationwide confronts, the Court perceives no colorable allegations against Reel. Instead, only Paragraph 5 of the Complaint discusses Reel's involvement in the purported scheme: "At all times relevant herein, Martin J. Reel was a Nationwide claim representative handling the Arringtons' insurance claim." (D.N. 1-3 at 2) Nothing in the Complaint alleges that Reed was "complicit in overcharging, participating in, [or] misleading the Arringtons in a fraudulent scheme." Nor does the Complaint allege that Reel made any representations to the Arringtons upon which they relied.[3]

This dearth of explanation persuades the Court that Reel was joined solely to avoid federal jurisdiction.[4] Therefore, Nationwide has satisfied the requirement of complete diversity among the parties, and Reel's fraudulent joinder will not defeat federal jurisdiction.

---

[3] In their reply brief, the Arringtons insist that the alleged scheme required Reel's participation: "Had Reel simply used the Cornerstone appraisal to determine the total loss from the fire, the fraud would have been prevented. As such, Reel is an integral part of the fraud and is personally liable for his actions." (D.N. 9 at 2) Whatever the merits of this assertion, it was not alleged in the Complaint.

[4] The Court does not apply Federal Rule of Civil Procedure 9(b) at this early stage of litigation. However, the Court's conclusion is buoyed by Rule 9(b)'s heightened pleading standards, which require plaintiffs alleging fraud to "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent'" in their Complaint. *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)). This standard is "designed to prevent 'fishing expeditions,' to protect defendants' reputations from allegations of fraud, and to narrow potentially wide-ranging discovery to

B.      Timeliness of removal to federal court

In removing this case to federal court, Nationwide relied upon 28 U.S.C. § 1446(b)(3), which states that when a case stated by the initial pleading is not removable, a notice of removal may nevertheless be filed "within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." Nationwide pointed to the Arringtons' written settlement demand of March 17, 2014, wherein they valued their case at $250,000.00. Nationwide argues that this demand put the insurance company on notice that the action was removable. Therefore, it reasoned, the notice of removal was timely filed within thirty days after receipt of the "other paper"—that is, the settlement demand—that first showed that the action was removable. Nationwide further asserted that the settlement demand demonstrated that the requisite amount in controversy was satisfied.

The Arringtons respond that Nationwide's removal to federal court came too late. Their counsel avers in an affidavit that during telephone conversations of July 2 and July 9, 2013, he made Nationwide's counsel aware that the Arringtons' damages could conservatively exceed one million dollars. (D.N. 5-2.) Atkins further states that during the latter conversation, "it was . . . discussed" that the lawsuit was partially based upon a fraud claim centered upon Nationwide's alleged use of two distinct programs, and that the "suit was filed in order to comply with any applicable statute of limitations regarding any ancillary claims which could have a shorter statute of limitations than a fraud claim." (D.N. 5-2 at 1.) Nationwide thus had thirty days from the date of this conversation to file a notice of removal, the Arringtons argue. Nationwide counters

---

relevant matters." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466-67 (6th Cir. 2011) (citation omitted) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 & n.11 (6th Cir. 2007)). The Arringtons have fallen far short of satisfying these pleading standards, leaving their claims against Reel vulnerable to a motion to dismiss on this basis.

7

that this conversation between attorneys does not constitute an "other paper" that starts the clock running for removal.

Sixth Circuit caselaw offers no guidance on this precise question, and the rule itself does not define "other paper" in either its terms or its legislative history. *See State Farm Fire & Cas. Co. v. Valspar Corp.,* 824 F. Supp. 2d 923, 932 (D.S.D. 2010). However, commentators have noted that § 1446(b) is designed "to commence the running of a new 30-day period once the defendant has received actual notice, through one of the documents described in Section 1446(b), that a previously unremovable case has become removable." 14C Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, *Federal Practice and Procedure* § 3731, at 519 (4th ed. 2009) (footnote omitted). "[F]ederal courts have given the reference to 'other paper' an expansive construction and have included a wide array of documents within its scope." *Id.* at 524 (footnote omitted). Courts differ in their application of this rule to informal writings, including correspondence between counsel. *See, e.g.*, *Sunburst Bank v. Summit Acceptance Corp.*, 878 F. Supp. 77, 81-82 (S.D. Miss. 1995) (holding that § 1446(b) was not restricted to papers formally filed in the case and determining that plaintiffs' demand letter satisfied the "other paper" requirement). *But see Bonnell v. Seaboard Air Line R.R. Co.*, 202 F. Supp. 53, 55 (N.D. Fla. 1962) (concluding that "mere correspondence" between counsel did not constitute "other paper").

Importantly, "'[a]lthough the requisite notice of removability may be communicated to defendants in either a formal or informal manner, the communication should be in writing.'" *State Farm*, 824 F. Supp. 2d at 934 (quoting Wright, Miller, Cooper & Steinman, *supra*, at 552-53). The majority of district courts have strictly construed the rule, holding that a written document is required. *Id.* (collecting cases); *see also Bowyer v. Countrywide Home Loans*

8

*Servicing LP*, No. 5:09-cv-00402, 2009 WL 2599307, at *3 (S.D. W. Va. Aug. 21, 2009) ("The 'receipt' of information in writing, whether formally or informally, from the plaintiff is a necessary event that commences the thirty-day window to remove. The defendant's subjective knowledge of grounds for removal is irrelevant and cannot independently create a right to remove the case.") (internal citation omitted); *CMS Sec., Inc. v. Burlington Ins. Co.*, No. C-09-2217 MMC, 2009 WL 2252106, at *1 (N.D. Cal. July 28, 2009) (finding an oral communication between counsel insufficient to constitute an "other paper"); *Garcia v. Shelter Gen. Ins. Co.*, No. 07-CV-0156-CVE-SAJ, 2007 WL 1302599, at *1-2 (N.D. Okla. May 2, 2007) (holding a telephone communication between counsel insufficient to satisfy § 1446(b)'s notice requirement, given the plain language of the statute and the presumption against removal); *Jong v. Gen. Motors Corp.*, 359 F. Supp. 223, 226 (N.D. Cal. 1973) ("[T]he time period to remove an action cannot depend on defendant's actual knowledge, because the statute expressly allows a defendant to rely on papers presented to it.").

Although some courts have permitted oral statements to satisfy the notice requirement, these cases share a distinguishing feature: "'the oral notices were given in court proceedings and/or in the presence of the presiding judge, thereby removing any proof problems regarding who said what at what time.'" *State Farm*, 824 F. Supp. 2d at 936 (quoting *Thomas v. Ritter*, No. 3:98CV530-H, 1999 WL 1940047, at *2 n.2 (W.D.N.C. Feb. 11, 1999)). Statements made under oath in a formal legal setting lessen the policy concerns that validate the majority view: "The writing requirement 'reduces disputes over knowledge of diversity or the amount in controversy and helps avoid later battles of credibility between opposing parties and lawyers.'" *Id.* (quoting *Broderick v. Dellasandro*, 859 F. Supp. 176, 178 (E.D. Pa. 1994)). Were oral communications between counsel sufficient, courts would be confronted with tremendous

9

questions of proof concerning defendants' subjective knowledge—perhaps involving evidentiary hearings upon every notice of removal and motion for remand. *Id.* (citing *Thomas*, 1999 WL 1940047, at *2).

In light of its steadfast emphasis upon judicial expediency and economy, it seems likely that the Sixth Circuit would take the position that § 1446(b) requires written notice of removability. Accordingly, the Court will not construe the alleged telephone conversation between counsel to constitute an "other paper" under Section 1446(b). The Court therefore holds that Nationwide timely removed this action within thirty days of receipt of the written settlement demand.

### C.     Amount in controversy

Finally, the Arringtons urge the Court to reject Nationwide's argument that the amount in controversy exceeds $75,000. They contend that Nationwide improperly relied upon a settlement demand sent to Nationwide's counsel on March 17, 2014, which instructed, "[t]his offer of settlement is made for settlement purposes only, and it is not to be used by you, your client, or anyone else for any other purpose." (D.N. 5 at 4) Given this admonishment, the Arringtons assert that not only was Nationwide's reliance on the indicated dollar amount misplaced, but that Federal Rule of Evidence 408 prohibits the company from furnishing the Court with that figure.

The Arringtons' reliance upon Rule 408 for this argument is misplaced. They are correct, of course, that a written settlement demand cannot be admitted at trial to prove or disprove the validity or amount of a claim. Fed. R. Evid. 408(a). However, "district courts in this circuit and both courts of appeal and district courts in other circuits have accepted the notion that such post-complaint letters are 'other paper' under § 1446." *Nagarajan v. Ostruskza*, No. 5:12-CV-00091-

TBR, 2012 WL 5077691, at *3 (W.D. Ky. Oct. 18, 2012) (collecting cases).  The Arringtons' written settlement demand constitutes admissible and relevant evidence concerning the amount in controversy.  In it, they clearly place a $250,000.00 minimum on the value of their case.  On this basis, the Court concludes that Nationwide has demonstrated that the case involves more than the jurisdictional minimum of $75,000.00.

**IV.     Conclusion**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Plaintiffs' Motion for Remand (D.N. 5) is **DENIED**.

February 25, 2015

**David J. Hale, Judge**
**United States District Court**